HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL KLEIN, as Trustee for the estate of Christine Tavares, DENNIS LEE BURMAN, as Trustee for the estate of Edward Anzaldua,

    Appellants/Plaintiffs,

v.

ALABAMA HOUSING FINANCE AUTHORITY, doing business in Washington as SERVISOLUTIONS,

    Appellee/Defendant.

Case No. C19-00020-RAJ

**ORDER DENYING APPELLANTS' BANKRUPTCY APPEAL**

This matter comes before the Court on Appellants' appeal from the bankruptcy court's dismissal of Plaintiff Christine Tavares' Second Amended Complaint. Dkt. # 6. For the reasons that follow, the Court **DENIES** Appellants' appeal and **AFFIRMS** the bankruptcy court's decision.

ORDER- 1

## I. BACKGROUND

In March 2014, Plaintiff Christine Tavares ("Tavares" or "Ms. Tavares") purchased a home with her former domestic partner, Edward Anzaldua ("Anzaldua"). DR # 13 at ¶ 11. The purchase was financed with a Federal Housing Administration ("FHA") insured loan. DR # 13 at ¶ 13. Tavares and Anzaldua also executed a Deed of Trust against the property. DR # 13 at ¶ 12. In November 2015, Anzaldua and Tavares separated after allegations emerged that Anzaldua was sexually assaulting Tavares' daughter. DR # 13 at ¶17. Tavares and Anzaldua continued to make payments on the loan until April 2016, when Anzaldua stopped making payments in lieu of child support. DR # 13 at ¶ 19.

After Anzaldua stopped making payments on the loan, Tavares approached Defendant/Appellee Alabama Housing Finance Authority ("Appellee" or "AHFA") about a possible loan modification. DR # 13 at ¶ 22. AHFA told Tavares that in order to obtain a loan modification, she would need to default on the mortgage. DR # 13 at ¶ 21. After defaulting, Tavares again approached AHFA and was told that in order to apply for a loan modification both borrowers (Tavares *and* Anzaldua) would need to apply or Tavares would need Anzaldua to execute a quitclaim deed. DR # 13 at ¶ 22.

On September 26, 2016, Tavares filed a voluntary petition for Chapter 7 bankruptcy. DR # 13 at ¶ 23. Tavares also engaged a housing counselor to help her apply for the loan modification. DR # 13 at ¶ 25. According to Tavares, AHFA tried to talk her out of hiring the housing counselor and told her that the quitclaim deed would no longer be helpful for the loan modification process. DR # 13 at ¶¶ 25-26. Tavares opted to continue using the housing counselor and submitted an application to AHFA for a HAMP loan modification with a partial claim in June 2017. DR # 13 at ¶ 27. According to Tavares, AHFA did not respond to her first application other than to deny the use of child support in her income calculation. DR # 13 at ¶ 27. Tavares submitted a second application in September 2017. DR # 13 at ¶ 30. AHFA denied Tavares' second loan

modification application. DR # 13 at ¶ 31. In the denial letter, AHFA detailed the bases for its denial including, among other things, Tavares' failure to include detailed income information from both borrowers (Tavares and Anzaldua). DR # 22, Ex. 8.

In November 2016, the bankruptcy court granted AHFA relief from the automatic stay and AHFA began nonjudicial foreclosure proceedings. DR # 26 at 8. In October 2017, Ms. Tavares brought this action in federal court, seeking an injunction to prohibit the sale of the property and damages (*Tavares v. AHFA*, No. 2:17-cv-01599-MJP (W.D. Wash.)). Dkt. # 6 at 13. AHFA filed a motion to dismiss and the Court granted Ms. Tavares' motion to amend the complaint. DR # 26 at 8. The Honorable Marsha J. Pechman also referred the action to bankruptcy court for pre-trial proceedings. *Id.* In February 2018, Ms. Tavares filed her first amended complaint. DR # 1. AHFA again filed a motion to dismiss and on June 7, 2018 the bankruptcy court granted the motion, with leave to amend. DR # 26 at 8. One month later, Ms. Tavares filed a second amended complaint, asserting a single claim under the Washington Consumer Protection Act. DR # 13. AHFA moved to dismiss for the third time (DR # 22) and the bankruptcy court granted the motion to dismiss, this time with prejudice. DR # 26. Appellants promptly appealed.[1] DR # 31.

**II. LEGAL STANDARD**

District courts have jurisdiction to hear appeals from a final judgment and order in a bankruptcy proceeding. *See* 28 U.S.C. § 158(a)(1). A district court reviews the

---

[1] Fed. R. Civ. P. 17(a)(1) provides that "an action must be prosecuted in the name of the real party in interest." After filing a chapter 7 bankruptcy petition, the debtor may no longer prosecute a cause of action belonging to the estate. Such action must be brought by the bankruptcy trustee. In its Order, the bankruptcy court noted that the underlying action was improperly brought by the debtor, Plaintiff Christine Tavares. DR # 26 at 6. However, the bankruptcy court declined to allow for the substitution of the real party in interest because the action was dismissed on the merits, with prejudice. *Id.* Appellants (Trustees for Tavares and Anzaldua), as the real parties in interest, now appeal.

bankruptcy court's conclusions of law de novo and reviews determinations of fact for clear error. *See In re Crow Winthrop Operating P'ship*, 241 F.3d 1121, 1123 (9th Cir. 2001); *In re Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004). A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him to relief. *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir. 1986). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indust., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

### III. DISCUSSION

At issue is whether the second amended complaint (the "Complaint") pled sufficient facts to state a claim under Washington's Consumer Protection Act ("CPA"). To prevail in a CPA action, the plaintiff must satisfy the following five elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) impacting the public interest, (4) causing injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 719 P.2d 531, 532 (Wash. 1986

Tavares' Complaint alleges five "unfair or deceptive acts" underlying her CPA claim: (1) AHFA failed to make a partial claim against FHA's Mutual Mortgage Insurance Fund" and failed to apply the proceeds to cure the default, (2) AHFA evaded a "real review" of Tavares' second loan modification application by "only mentioning the parameters of HAMP standalone modifications" and not applying the parameters to Tavares' income, (3) AHFA misled Tavares with conflicting directives regarding the necessity for a quitclaim deed, (4) AHFA discouraged the use of a housing counselor, and (5) AHFA misled Tavares regarding the exclusion of child support payments from her income calculation. DR # 13.

The bankruptcy court dismissed the Complaint, holding that Tavares failed to plead sufficient facts to show: (1) AHFA's failure to apply for a partial claim constituted

an unfair or deceptive act, (2) Plaintiff suffered an injury resulting from AHFA's conflicting directives regarding the quitclaim deed, (3) Plaintiff suffered an injury resulting from AHFA discouraging the use of a housing counselor, and (4) AHFA's denial of the loan modification constituted an unfair or deceptive act.[2]  DR # 26. Appellants now seek review of the bankruptcy court's ruling that the Complaint failed to state a claim under the CPA and that further amendment would be futile.  Dkt. # 6.

### A. Failure to Apply Partial Claim

Appellants first argue that the bankruptcy court incorrectly held that Tavares failed to plead sufficient facts to show that AHFA's failure to apply a partial claim constituted an unfair or deceptive act.  Dkt. # 6 at 18.  In the Complaint, Tavares alleged that AHFA failed to use its partial claim against FHA's mutual mortgage insurance and failed to cure Tavares' default by not applying the insurance proceeds.  DR # 13 at ¶ 43.  The bankruptcy court held that this was insufficient to state a claim under the CPA, noting that under FHA guidelines, applicants must provide documentation for all borrowers' income to qualify for a HAMP loan modification with a partial claim.  DR # 26 at 12-13. Because Tavares did not provide financial information for Anzaldua, the court determined that AHFA's failure to apply for a partial claim was not an unfair or deceptive act.  The bankruptcy court also held that Tavares failed to plead an injury resulting from AHFA's failure to apply a partial claim because it appeared that Tavares would not have qualified for a HAMP loan modification with a partial claim given the FHA's requirement that applications provide documentation for each borrower's income. DR. # 26 at 12.

When an FHA-insured mortgage loan goes into default, mortgagees must "engage in loss mitigation actions for the purpose of providing an alternative to foreclosure[.]"  12

---

[2] The bankruptcy court consolidated the second and fifth allegations for the purposes of its analysis.  DR # 26 at 14.

ORDER- 5

U.S.C. § 1715u(a). Loss mitigation may include, but is not limited to, special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure. 12 U.S.C. § 1715u(a). FHA mortgagees are required to comply with the requirements in the FHA Single Family Housing Policy Handbook ("FHA Handbook"). *See* Federal Housing Administration, Single Family Housing Policy Handbook 4000.1, at 609 (Effective Date: July 10, 2019).[3] The FHA Handbook requires the submission of detailed financial information from all borrowers for the purposes of a loss mitigation analysis. *Id.* at 658. The parties do not dispute that Ms. Tavares did not provide Anzaldua's financial information. Dkt. ## 6, 7. Instead, the Complaint alleges that AHFA's failure to use its partial claim against the FHA's Mutual Mortgage Insurance Fund to cure Tavares' default is an unfair or deceptive act. DR # 13 at ¶ 43. This is insufficient to state a claim for relief.

Under the CPA, an act or practice is unfair or deceptive where it "has a capacity to deceive a substantial portion of the public," or "constitutes a per se unfair trade practice." *Hangman,* at 535. "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman*, at 536. Here, Ms. Tavares did not allege that AHFA violated any statute that "has been declared by the Legislature to constitute an unfair or

---

[3] As an initial matter, the Court notes the parties include and reference several documents other than the complaint in their briefs. At the motion to dismiss phase, a court typically cannot consider evidence beyond the four corners of the complaint, without converting the motion to a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions to this rule: (1) the court may consider a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question, and (2) the court may consider evidence subject to judicial notice. *Id*. at 688. As the bankruptcy court noted, the FHA Handbook and AHFA's denial letter (DR # 22, Ex. 8) were both referenced in the Complaint. Accordingly, the Court will also consider both documents for the purposes of this appeal.

deceptive act in trade or commerce…" *Id.*; *see also Smart v. Emerald City Recovery*, LLC, No. C18-0448-JCC, 2018 WL 3569873, at *4 (W.D. Wash. July 25, 2018) (holding the plaintiff failed to allege a per se violation of the CPA where the underlying statutory violation did not constitute an unfair or deceptive act).

Similarly, the Complaint fails to plead facts suggesting that AHFA's acts have the "capacity to deceive a substantial portion of the public." *Hangman,* at 535. As the bankruptcy court noted, the Complaint does not allege any facts suggesting that AHFA ever applied for a partial claim or that it had an obligation to do so when Tavares did not meet the FHA requirements. DR # 26 at 12; *see also* DR # 13 at ¶ 43. The Complaint also does not allege facts suggesting that AHFA ever received any "proceeds" from a partial claim such that it would be obligated to apply those proceeds to cure the default. While it is possible that AHFA *could* have requested a partial claim from HUD, its failure to do so is not an an act capable of deceiving a substantial portion of the public. *Hangman,* at 535.

Appellants argue that Tavares could not provide Anzaldua's information because of the no-contact order and his refusal to cooperate. Dkt. # 8 at 17. The Court sympathizes but that is not sufficient to state a claim for relief under the CPA. It was not "unfair or deceptive" for AHFA to decline to request a partial claim from HUD given Tavares' failure to satisfy the FHA guidelines. The Court finds that Ms. Tavares failed to plead sufficient facts to establish that AHFA's failure to apply a partial claim was an "unfair or deceptive" practice under the CPA.

### B. Injury from Conflicting Directives Regarding Quitclaim Deed

Next, Appellants argue that the bankruptcy court erred in holding that the Complaint did not allege sufficient facts to establish an "injury" resulting from AHFA's conflicting directives regarding the necessity of a quitclaim deed. Dkt. # 6 at 20; DR # 26 at 13. In its Order, the bankruptcy court held that Tavares failed to plead an injury

resulting from AHFA's misleading statements because Tavares' loan modification application was denied for other reasons. DR # 26 at 13.

This is a closer call. Appellants allege that the use of a quitclaim deed would have eliminated the need for Tavares to provide Anzaldua's income information in her application – one of the reasons that Anzaldua's application was denied. Dkt. # 6 at 20. Assuming for the purposes of this motion to dismiss that Tavares is correct, there is still the issue of the other FHA requirements. Even if HUD would have accepted the application without Anzaldua's income information, the Complaint does not allege that securing a quitclaim deed would have also freed Tavares from satisfying the other FHA requirements, including the income requirements and possession of a clear title. Dkt. # 7 at 22.

Under the CPA, a plaintiff must establish an injury to his or her "business or property" resulting from the defendant's unfair or deceptive act. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington*, Inc., 162 Wash. 2d 59, 83 (2007) (finding that to state a claim under the CPA a plaintiff must allege an injury and "a causal link between the unfair or deceptive act and the injury suffered"). Here, Appellants argue that Tavares would not have been required to submit Anzaldua's income information if she had obtained the quitclaim deed. Dkt. # 6 at 20. But it appears that Tavares' application was also denied for other reasons, *in addition to* her failure to provide Anzaldua's income information. DR # 22, Ex. 8. Moreover, Tavares did not allege that Anzaldua would have agreed to quitclaim his interest. To the contrary, Appellants contend that the reason Tavares was unable to provide Anzaldua's income information to satisfy the FHA requirements was because of the no-contact order and his refusal to cooperate. Dkt. # 8 at 17. Without more, the Court finds that the Complaint does not allege sufficient facts to establish that Ms. Tavares suffered an injury resulting from AHFA's conflicting directives regarding the quitclaim deed.

### C. Injury from Discouraging Use of Housing Counselor

Appellants also challenge the bankruptcy court's determination that the Complaint failed to plead sufficient facts to establish an "injury" resulting from AHFA's discouragement of the use of a housing counselor. DR # 26 at 13-14. In its Order, the bankruptcy court held that Ms. Tavares failed to satisfy the "injury" element because she still decided to use a housing counselor, despite AHFA's alleged discouragement. *Id.* at 14. Appellants argue that AHFA's practice of discouraging the use of housing counselors is an "unfair and deceptive" act, negatively impacting the public. Dkt. # 6 at 21-23. Even if that were the case, to prove a violation of the CPA a plaintiff must demonstrate all five elements of the claim – the failure to meet any of the elements is fatal. *Hangman,* at 535. While AHFA's alleged practice of discouraging the use of housing counselors may very well be an unfair or deceptive practice, Ms. Tavares alleged no facts showing that this practice *injured her directly*. Instead, it appears that this counselor actively assisted her in submitting two separate loan modification applications. DR # 13 at ¶¶ 27, 30. Accordingly, the Court finds that Ms. Tavares failed to sufficiently plead an injury resulting from AHFA discouraging the use of a housing counselor.

### D. Unfair/Deceptive Denial of Loan Modification

Finally, Appellants argue that the bankruptcy court erred in finding that the Complaint failed to plead sufficient facts to show that AHFA's denial of Tavares' loan modification application constituted an unfair and deceptive act. Dkt. # 6 at 24-25. Appellants acknowledge that Tavares' loan modification application was denied for, among other reasons, a failure to provide the income information for both borrowers. Dkt. # 6 at 24. Appellants argue, however, that this was "unfair or deceptive" because Ms. Tavares' housing counselor indicated that she could afford a modification, without Anzaldua's income. Dkt. # 6 at 24. Appellants further contend that AHFA used the no-contact order to deny any loan modification application that failed to comply with FHA guidelines regarding the inclusion of all borrower income information. *Id.* But this is

insufficient to establish an unfair or deceptive act under the CPA. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 719 P.2d 531, 535 (Wash. 1986).

FHA promulgated guidelines for loan modifications and partial claims. Ms. Tavares did not satisfy all of the guidelines and, as a result, AHFA rejected her application for a loan modification with a partial claim. Whether AHFA *could* have approved the application or given Tavares more time to satisfy the FHA guidelines is irrelevant. A mortgagee's denial of an application for a loan modification that did not meet FHA guidelines is insufficient to state a claim for relief under the CPA.

The Court is sensitive to Ms. Tavares' situation. Unfortunately, the facts alleged in the Complaint are insufficient to state a claim for relief CPA. Accordingly, the Court **AFFIRMS** the bankruptcy court's determination that the Complaint failed to state a claim for relief under the CPA.

### E. Leave to Amend

The bankruptcy court did not err when it denied Tavares leave to amend. Ms. Tavares has now been given three separate opportunities to amend her complaint to address deficiencies and has failed to do so. The Court is unconvinced that further amendment would be productive. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (holding that a court does not abuse its discretion in denying leave to amend where amendment would be futile).

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Appellants' appeal and **AFFIRMS** the bankruptcy court's decision. DR # 26.

Dated this 12th day of September, 2019.

The Honorable Richard A. Jones
United States District Judge